BUSH v. HARRY BECKER & CO.

NEGLIGENCE—TRUCKS—TERMINAL BUILDING PLATFORM—FINDING OF COURT.

> Finding of trial court, sitting without a jury, that produce dealer's employee was not guilty of negligence as a matter of fact or law in operation of heavily laden four-wheeled truck along narrow platform of terminal building *held*, not against the preponderance of the evidence, where evidence shows that as truck approached a group of men standing on platform, the employee called to them, they got out of the way, and before employee could then stop the truck it struck an empty tomato crate he had not theretofore seen and it was pushed against an empty skid so as to force plaintiff off the platform to the ground, four feet below, where he sustained injuries to a foot.

For rule that negligence exists only after a reasonable man would have apprehended a risk of invading another's rights with such perception of the surrounding circumstances as a reasonable man would have, see 2 Restatement, Torts, § 289.

Appeal from Wayne; Miller (Guy A.), J. Submitted January 15, 1941. (Docket No. 6, Calendar No. 41,346.) Decided March 11, 1941.

Case by Morris Bush against Harry Becker & Company, a Michigan Corporation, for personal injuries sustained when he was pushed from loading platform. Judgment for defendant. Plaintiff appeals. Affirmed.

*Albert Summer,* for plaintiff.

*Lightner, Crawford, Sweeney, Dodd & Mayer,* for defendant.

Chandler, J. Defendant conducts a produce business from the Detroit Produce Terminal. The building in question fronts on Green street in the city of Detroit, being some 300 feet in length and 50 to 60 feet in width. Along each side thereof is a loading dock, seven feet in width, and about four feet from the ground. The sides of the building, adjacent to the loading docks, are really a series of openings for hauling produce into and out of the terminal. The moving is done by means of two different types of apparatus, one being a movable truck with four wheels, the other a stationary skid or platform having four legs which is raised and moved by means of a hydraulic jack which can be run thereunder.

In the morning of June 7, 1939, plaintiff, a peddler, was present at the terminal for the purpose of purchasing his wares for the day. He was standing on the edge of the south loading platform, facing in a southwesterly direction, about one and one half to two feet east of an empty skid which was also on the edge of the platform, engaged in conversation with four other peddlers. At this moment, Harry Solomon, one of defendant's employees, approached

from the west, pulling one of the skids upon which was a load of tomatoes estimated to weigh from 1,600 pounds to a ton.

The testimony becomes somewhat confused as to what occurred. One theory presented is that the skid being pulled by Solomon struck the corner of the empty skid near which plaintiff was standing, causing it to be forced against plaintiff and resulting in pushing him from the platform. The other theory is that the skid hauled by Solomon struck an empty tomato box forcing it against the empty skid which in turn struck plaintiff and pushed him from the platform. Defendant, on the other hand, suggests that plaintiff jumped from the platform. In any event, he received injuries to his left foot and seeks to recover damages in this action.

The case was tried without a jury and the court entered judgment of no cause of action for defendant. Plaintiff has appealed.

In his opinion, the trial court found that the skid being pulled by Solomon struck the empty tomato box which caused the truck to deviate from its course into the empty skid which was then forced against plaintiff. He also found that Solomon was not guilty of negligence. This finding receives full support from the following testimony of Solomon:

"*Q.* Now, the empty tomato box that your skid hit——

"*A.* Yes, sir.

"*Q.* It was at your right, was it?

"*A.* Yes, sir.

"*Q.* And where was that empty tomato box in relation to the skid that was standing there?

"*A.* It was laying near the skid on the floor on the edge of the dock.

"*Q.* At the edge of it?

"*A.* That is more like in the middle of the dock, close to the edge. * * *

"*Q.* "Now, that box was lying——

"*A.* (Interposing) : Next to the skid, practically in my way.

"*Q.* Right to your right?

"*A.* Yes, sir.

"*Q.* Between you and the empty skid?

"*A.* Yes, sir.

"*Q.* Now, where were the men standing?

"*A.* Standing in front of the skid.

"*Q.* And when you say in front of the skid——

"*A.* (Interposing) : Well, they were facing east. They had their back turned to the west.

"*Q.* Well now, there were some men standing then?

"*A.* Yes, sir.

"*Q.* Near the west end of the skid?

"*A.* Right.

"*Q.* With their backs toward you, facing east?

"*A.* Yes, sir.

"*Q.* How many men were there?

"*A.* About three or four, I believe.

"*Q.* There were three or four?

"*A.* Yes, sir.

"*Q.* Were there some men on the other side of the skid?

"*A.* No, sir: I did not see any.

"*Q.* You say as you came along there, you shouted, 'Look out, I am coming through'?

"*A.* 'Look out, I am coming through.' Yes, sir.

"*Q.* Where were you when you shouted that warning?

"*A.* I must have been about four feet away or so.

"*Q.* That is four feet away from what?

"*A.* From the empty skid. Yes, sir.

"*Q.* From this end (indicating)?

"*A.* Where those men were standing.

"*Q.* From the west end of the empty skid?

"*A.* West end; yes, sir.

"*Q.* What did the men do?

"*A.* They just stepped on one side.

"*Q.* Did they do that?

"*A.* They stepped close to the edge of the dock.

"*Q.* When did they do that, when you shouted?

"*A.* When I shouted; yes, sir.

"*Q.* Then what happened?

"*A.* I hit the skid; I hit the box and the box hit the skid and Mr. Bush jumped off the dock backwards.

"*Q.* Had you seen Mr. Bush prior to that time?

"*A.* Not until he jumped off the dock, because he was bending over; he had one foot on the dock and one foot on the beam. * * *

"*Q.* Now, did it appear to you as you approached the vicinity of this accident that you had room to pass between the north wall and the skid that was right on the dock?

"*A.* Well, I might have had room if them boxes hadn't of been in my way; yes, sir; because it is a pretty close passage to go through.

"*Q.* In fact that loading dock is just about wide enough?

"*A.* Wide enough for one skid on one side and one skid to go through.

"*Q.* Wide enough for one skid on one side and enough for one skid to go through?

"*A.* Yes, sir.

"*The Court:* The dock is 84 inches wide and two of those skids would be 76 inches.

"*Mr. Dodd:* That is right.

"*A.* It is about——

"*The Court:* That would not leave you very much clearance.

"*A.* It is about three and a half feet wide on the skid, not quite.

"*The Court:* That would make it about 42 inches wide on the skid. It would make a pretty close fit.

"*Mr. Dodd:* No question about that.

"*Q.* (By Mr. Dodd): So that, what your truck, your hand truck, hit was an empty tomato box?

"*A.* Yes, sir.

"*Q.* And what happened to the tomato box? What did it do?

"*A.*   The tomato box went on one side of the skid, skidded around on an angle like.

"*Q.*   The tomato box in turn caught the end of the skid?

"*A.*   Yes, sir.

"*Q.*   Which moved——

"*A.*   (Interrupting): Moved the skid.

"*Q.*   Forward or sideways?

"*A.*   Yes, sir; because I had to stop then.

"*Q.*   Did your truck come in actual contact with the skid?

"*A.*   Not with the skid, with the box, sir.   *   *   *

"*Q.*   You also testified that ordinarily what you tried to do is kick them out of the way?

"*A.*   That is right.

"*Q.*   Why did you not do that in this case?

"*A.*   There was three men standing in front of the box and I didn't see the box until I got on top of it, because when those men moved, I realized I could make that, but I didn't realize my skid was going to hit the box, otherwise I would slow down ahead of time.

"*Q.*   When you saw you were going to hit?

"*A.*   You can't tell because I am past the box.

"*Q.*   So that you did not know you were going to hit the box until you passed it?

"*A.*   That's right.

"*Q.*   That is the tomato box?

"*A.*   Yes, sir.

"*Q.*   You saw it before you passed it, though?

"*A.*   That is right, but I didn't know I was going to hit it.

"*Q.*   You did not know you were going to hit it?

"*A.*   No, sir.

"*Q.*   Now, did you see Mr. Bush before you hit the skid?

"*A.*   No, sir; not until Bush jumped off the dock. I didn't notice him because those men stood in front of him and I couldn't see him.   *   *   *

"*Q.*   How many feet were you away from the skid?

"*A.* Now, wait a minute. As I was coming along to that skid, there was three men in front of Mr. Bush. When I come so close to them there, I hollered, 'Get out of my way. I am coming through.' And they moved and I hit the box.

"*Q.* Why didn't you stop your hydraulic and skid before you ran into this skid that was standing right there?

"*A.* I figured I could make it through. If I knew I was going to hit him, I would stop.

"*Q.* In other words, you thought there was enough room. You knew that it was going to be close?

"*A.* It always is close quarters, yes, sir.

"*Q.* Why didn't you slow your truck to a very slow pace rather than go as fast as you did?

"*A.* When I hollered, I had to slow down, and I come almost to a stop, and I was trying to make a dead stop until the skid hit the box.

"*Q.* You hit that skid quite a severe blow, did you not?

"*A.* No, I hit the box. The force of my load don't take much to slide that skid over. The blow is the weight of the load I had."

The testimony also shows that Solomon was pulling the load of tomatoes at a "fast walk;" that he could not see the empty tomato box because of the men standing in front of him; and that he gave warning of his approach and as the men standing in front of him responded thereto, the empty tomato box came into view. By then, it was impossible to bring the heavy load to a stop.

Reviewing the entire record, we cannot find that the decision of the trial court was contrary to the preponderance of the evidence or that defendant's employee was guilty of negligence as a matter of law as claimed by appellant.

Furthermore, the trial court expressed serious doubt as to whether plaintiff had established his

freedom from contributory negligence, assuming defendant's negligence to have been established. Although it is not necessary for us to decide this point, it may be noted in passing that the attitude of the trial court on this question is not without justification.

The judgment is affirmed, with costs to appellee.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.